**UNITED STATES DISTRICT CIVIL COURTS
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

RECEIVED

MAR 27 2023

Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| Katherine Ward | ) |
| 2855 Chinkapin Oak Lane | ) |
| Woodbridge VA 22191 | ) |
| (757) 650-3683 | ) |
| wardk_01@msn.com | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| The Honorable Alejandro Mayorkas | ) |
| Secretary of Homeland Security, | ) |
| Office of the Executive Secretary | ) |
| MS#0525 | ) |
| Department of Homeland Security | ) |
| 2707 Martin Luther King Jr., AVE SE | ) |
| Washington DC, 20528-0525 | ) |
| | ) |
| Defendant | ) |
| | ) |

Case: 1:23-cv-00813
Assigned To : Walton, Reggie B.
Assign. Date : 3/27/2023
Description: Employ Discrim. (H-DECK)

## JURISDICTION AND VENUE

1. There are federal laws that prohibits employment discrimination. Plaintiff employer has taken and adverse employment action against her because of unlawful employment discrimination *42 U.S.C § 2000(e)*. The Court has jurisdiction over this dispute because it arises under the Constitution and laws of United States. *See U.S.C § 1331* to render the declaratory and injunctive relief that the Plaintiff request. The district is a proper venue because Washington DC resides in the district. *See 28 U.S.C § 1391(e)*.

1

**PARTIES**

2.  Plaintiff is an African American Female and service-connected disabled Iraq War Veteran and retired after 20 years of service and served our country because she believed in an America that is committed to ensuring everyone has an equal opportunity have a meaningful life. Plaintiff Katherine Ward were employed with Department of Homeland Security (DHS) Customs and Border Protection (CBP) as a General Schedule (GS) -13 in a "Career Competitive" position in federal service in District of Columbia from 2014 through 2020, when the events at issue in this lawsuit took place.  She filed a formal Equal Employment Opportunity (EEO) complaint in 2017 against Department of Homeland Security CBP for discrimination and harassment based on, sex, disability, and reprisal for prior EEO activity discrimination lawsuit which began in 2017 and continued through 2020.

Administrative law judge (ALJ) issued a decision without a hearing finding no discrimination. *Ex. 1 at 1-21*.  Plaintiff appealed, and the Commission's prior decision affirmed the Agency's final order.  Plaintiff filed a request for reconsideration and the decision of the Commission to deny the request and the decision in EEOC appeal number 2022000498 remained Commission's decision.  All administrative remedies were exhausted with Equal Employment Opportunity with the decision of the Commission and there is no further right of administrative appeal from the Commission's final decision and given the right to file a civil action in United States District. Court. *Ex. 2 at 1-5*.

**DEFENDANT**

3.  The Honorable Alejandro Mayorkas is the Secretary, U.S. Department of Homeland Security is a cabinet level federal executive agency that oversees the U.S. Customs and Border Protection (CBP) a constituent agency of DHS and the Plaintiff is suing him in his official capacity.

2

## STATEMENT OF FACTS

4.  On April 8, 2020, Plaintiff was issued a proposal letter for removal. *Ex. 3 at 1-5.* The letter charged Plaintiff with failure to follow supervisory instructions and conduct unbecoming.  The first charge included two specifications and the second charge included five specifications.  CBP Standards of Conduct Ethical Conduct and Responsibilities Directive number 51735-013B effective date December 9, 2020.  Every employee shall immediately report allegations of misconduct to Joint Intake Center. *Ex. 4 at 1-18.*

Ronald Ocker, Timothy Finnegan Human Resource, Jacqueline Russell-Taylor, and Dwight Riley, with the approval of Office of Chief Counsel violated the *Directive and Executive Order (EO) 12674, Principles of Ethical Conduct for Government Officers and employee* and blatantly disregarded CBP Directive and mandatory requirements for the Executive Branch. Apparently, Mr. Ocker was not held accountable for his action instead he was promoted to the position of Acting Assistant Commissioner (AC) for CBP Office of Intelligence. *Ex 4. (a) at 1*

5.  On April 8, 2020 Mr. Ocker received letter to participate in an Alternative Dispute Resolution (ADR) process, for mediation regarding Mr. Riley continuing harassment and retaliation and he would represent Office of Intelligence (OI) chain of command on April 13, 2020. *Ex. 5 at 1-4.* Ms. Russell-Taylor drafted the removal proposal notice dated April 8, 2020.  Mr. Ocker was removed as deciding official because he was a named individual in Plaintiff prior EEO activity. *Ex 5 (a) at 1-8.*  Agency agreed with motion *Ex 5. (b) at 1-3.*  Jeb Harmon was designated as an additional representative for the Agency EEOC case HS-CBP-01024-2017. *Ex. 5 (c) at 1-2.*

Mr. Ocker was replaced with Mr. Collins as the deciding official and Mr. Ocker assisted Mrs. Russell-Taylor with drafting the proposal notice and he assisted AC Collins with drafting the decision letter and Mr. Collins were aware of Plaintiff prior EEO activity on February 3,

2020. *Ex. 6 at 39 transcript Merit System Protect Board.*

6. On April 10, 2020, Plaintiff received proposal for removal delivered to her resident and admitted herself to FT Belvoir Community Hospital emergency room for anxiety and feeling overwhelmed for constant harassment by Mr. Riley and Mr. Ocker. *Ex. 7 at 1-8.*

Plaintiff supervisor Julius Henderson retaliated and made it personal on April 10, 2020 by making defamatory accusations to CBP management Plaintiff "stated she felt like doing harm to Mr. Riley and was given meds and she was going Home." It has been made understood that Fort Belvoir Community Hospital physicians are not authorized to provide mental health patients medicine during emergency room visits. The only medical physician authorized to prescribe medication to Plaintiff is her Psychiatric Nurse Practitioner Behavioral Health Department where she has been in treatment since 2014.

On April 11, 2020 Julius Henderson continued with defamatory accusations to CBP management. Mr. Henderson stated Plaintiff reported to Prince William Police Department because "she was waking up in the middle of the night shaking and thinking about Mr. Riley and gave her a card to call someone and talk to them." Plaintiff did report to Prince William Police Department early Saturday morning Plaintiff was suffering from sleep deprivation and anxiety attack from ongoing events and unable to continue the drive to Fort Belvoir Community Hospital. He retaliated and behaved in a way that was intentionally and malicious. Mr. Henderson only had knowledge of Plaintiff visit to Prince William County Police Department because she had a security clearance and Plaintiff was following protocol and reporting suicidal ideation.

Plaintiff cannot be held responsible for what others claim she said absent credible evidence that she, in fact said it. *See Gilmore v Department of the Army,* 87 M.S.P.R 579, 34

4

(2001).

7. On April 11, 2020, Plaintiff received a Protective Order from Prince William County Police that was issued from Stafford County Court because of the very serious defamatory accusation by her supervisor Mr. Henderson concerning Mr. Riley. Plaintiff immediately contacted Mr. Henderson demanding an answer as to why Prince William County was at the resident with a protective order and he did not respond with an answer. After Plaintiff contacted Mr. Henderson, he e-mailed the Agency on Saturday April 11, 2020. Plaintiff spiraled a full-blown Anxiety attack requested neighbor to call 911 because Plaintiff was in distress and astounded. Emergency personnel arrived trying to calm Plaintiff and provided her time to talk at her pace as to what happened, allowing her to be upset about what happen and provide support, and provided steps for deep breathing techniques. Once Plaintiff emotions were controlled an acquaintance Natasha Williams arrived and transported her back to Fort Belvoir Community Hospital emergency room within a 72-hour period. *Ex 8 at 1-4.*

8. Prince William County served Plaintiff on April 14, 2020 to appear in court on April 28, 2020, Mr. Riley was seeking a protective order for 2 years, and judge denied his request and granted 6 months. Plaintiff name placed on a firearm prohibition in Virginia based on mental illnesses and declared mentally incompetent by Stafford County Judge. Mr. Henderson defamatory accusations had a devastating impact on Plaintiff's life, career, and reputation and he had no right to blatantly false and misleading information. Mr. Henderson is presently the Deputy Director of Security and should be held accountable per CBP table of offenses and penalties. Deliberately making known false, malicious, or unfound statement against subordinates. *Ex. 9 at 1-3.*

CBP held document from Mrs. Russel-Taylor dated April 15, 2020 and Plaintiff had no knowledge of this documentation until March 11, 2023. Mr. Riley conspired with Mrs. Russell Taylor on the April 14, 2020 court notice. Mr. Riley e-mailed Mr. Henderson on April 13, 2020 if he had communicated with Plaintiff. *Ex. 10 at 1-2.*

Plaintiff cannot be held responsible for what others claim she said absent credible evidence that she, in fact said it. *See Gilmore v Department of the Army,* 87 M.S.P.R 579, 34 (2001).

9. On February 3, 2020, Plaintiff e-mailed Mr. James Collins requesting temporary assignment. Ex. *11 at 1-14.* On February 24, 2020, Mr. Riley requested a meeting with Plaintiff and admitted in e-mail he had not spoken to Plaintiff since 2018. *Ex 11(a) at 26.* Plaintiff attended the meeting with her supervisor Mr. Henderson only after she e-mailed Mr. Collins on February 3, 2020, regarding her job duties and to express her continual leadership concerns she was having with Mr. Riley, particularly the lack of written and open communication regarding her job duties relative to her Reasonable Accommodations were not properly being followed before the February 24, 2020 meeting.

Agency submitted only one section of the Plaintiff e-mail conversation Ward v DHS DC 0752-20-0712-1- Agency Bates No. 0011 and full e-mail conversation was submitted in Agency supplemental P.2. *Ex. 11 (b) at 23-31.*

Plaintiff did not feel comfortable interacting with Mr. Riley because of his continuing harassment causes her anxiety in relation to her Adjustment Disorder. Plaintiff stated that Mr. Riley was part of her EEO complaint for retaliation. When her area of responsibility was brought up, Plaintiff asked whether Mr. Collins knew about it. Mr. Riley stated that it was his division and Plaintiff stated that she was waiting to hear back from Mr. Collins. Plaintiff

was expecting Mr. Collins to discuss as to why the Plaintiff wanted to relocate to Office of Field Operations (OFO) from her early February 3, 2020 email.

Plaintiff had to abruptly leave the meeting because she experienced a hostile environment that triggered her anxiety. Plaintiff e-mailed her supervisor Mr. Henderson on February 24, 2020 that the meeting with Mr. Riley should be documented for the record and requested Mr. Ocker to have Mr. Collins remove Plaintiff from under Mr. Riley leadership and management was copied also on the email, Mrs. Russell-Taylor, Charles Howard, and Mr. Ocker. *Ex. 11(c) at 1-4.*

10. Plaintiff e-mailed EAC Ferrara on February 25, 2020 for retaliatory actions by Mr. Riley because Plaintiff notified Mr. Collins February 3, 2020. *Ex 12. at 1-3.* JIC never acknowledge Mr. Ferrar notification.

11. On or about February 27, 2020 Plaintiff e-mailed the Joint Intake Center (JIC) requesting a cease and desist order. In October 2018, Mr. Riley was informed not to communicate with Plaintiff because he causes her anxiety. Plaintiff e-mailed the JIC for the second time on February 28, 2020 signifying she was afraid to return as Mr. Riley continued harassment and attacked when he became aggressive in the office on February 24, 2020 and the JIC never acknowledged Plaintiff request for a cease and desist order. *Ex 13 at 1-17.*

On February 27, 2020, Necia Chambliss e-mailed, and Plaintiff e-mailed Ms. Chambliss on February 28, 2020 requesting assistance. *Ex. 13 (a) at 1-2.* Plaintiff e-mailed Ms. Chambliss for the third time March 2, 2020. *Ex. 13 (b) at 1-3.*

12. On March 2, 2020 Mr. Riley, e-mailed Timothy Finnegan and provided a memo, to charge Plaintiff with "failure and refusal to follow orders" for her conduct on February 24, 2020. *Ex. 14 at 1-2.*

13. Plaintiff was additionally charged for eight hours of sick leave during this time. Plaintiff e-mailed supervisor Mr. Henderson numerous times about the leave situation on March 16, 2020, there was never a response. Plaintiff sent an email on March 17, 2020, because she once again expressed and emphasized to management and leadership the amount of anxiety and stress Plaintiff was under and how the interactions with Mr. Henderson and Mr. Riley caused Plaintiff server stress. Plaintiff e-mailed JIC requesting Cease and Desist. *Ex 15. at 1-24.*

Plaintiff communicated with Michael Radford at Office of Professional Responsibility (OPR) requesting official documentation from Fort Belvoir Community hospital regarding her security clearance. Mr. Henderson was always aware Fort Belvoir was her official medical treatment facility and once again blatantly provide misleading information.

14. Plaintiff had a conversation about a refrigerator with her fellow coworkers. Plaintiff coworkers indicated she raised her voice in a conversation that was very disrespectful. Plaintiff returned from Thyroidectomy surgery in January 2020 and physicians had concerns about her voice it was like a whisper and was told by doctors who expressed it may take a year or two before it returns to normal. The owner of the refrigerator retired Michael Brown was on the telephone with another employee and specified he did not leave the refrigerator with anyone.

Plaintiff co-workers Ryan Baughman, Clarence Ford Jr., Craig Bettis, and Michael Kirkland, gave individual and similar details as to what occurred and if the actions were concerning all such claims should have been reported to the Joint Intake Center (JIC), where all employee complaints and accusation are reported for internal investigation as a standard operating procedure. Their defamatory accusations had a role in Plaintiff's removal from federal service their actions were intentional and malicious, Clarence Ford Jr., Craig Bettis, and Michael

Kirkland defamatory accusations had no right to spread false information.

Craig Bettis testified under oath at Merit System Protection Board Hearing. *Ex.16 at 1-8, and Ex 16 at 25, 26, 27, 28 transcripts M.S.P.B.* Mr. Finnegan, and Mr. Riley, demanded information from Clarence Ford Jr. Craig Bettis, and Michael Kirkland for February 2022 for removal process and there is a redacted employee name for office of chief counsel page 3 Mr. Finnegan was working with moving forward with the allegations. Ms. Russell-Taylor testified for the M.S.B.P under oath Director Riley was "uninvolved in the proposal process and did not speak with him about any of the charges or supporting specifications." *Ex 16 at 39 transcripts M.S.P.B.* Mrs. Russel-Taylor was on all email communication between Mr. Riley and Mr. Finnegan. Defamation 28 U.S Code §4101 have caused damage to reputation or emotional distress, presented any person in a false light.

15. On June 26, 2020, Plaintiff Katherine M. Ward, a Security Specialist (GS-0080-13), was removed from Federal Service by a final decision rendered by Assistant Commissioner Mr. Collins. *Ex 17 at 1-5.* There was no detailed information referring to specification charges 1-5 in the removal letter dated June 26, 2020 which was cited in the proposal letter for removal. Plaintiff filed an Appeal on June 30, 2020 with the M.S.P.B. through her attorney.

DHS Civil Rights and Civil Liberties (CRCL) investigated Plaintiff unlawful termination, discrimination, harassment, and reprisal for prior EEO activity from Mr. Collins June 26, 2020 decision and he was removed from CBP on September 30, 2021, and relocated to Director Transnational Crime and not held legally responsible for his action. On October 1, 2021 DHS revised the Anti-Discrimination Policy Statement. *Ex. 18 at 1-3.* CRCL issued it final action on November 2, 2021 adopting the AJ's decision in finding no discrimination. *Ex. 19 at 1-7.* CRCL of 1964 prohibits discrimination and adopting AJ's decision CRCL is condoning

management behavior.

## CLAIMS

### *Claim 1*

*Whether the removal decision was improper because the Douglas Factors were not properly weighed.*

Mr. Collins was required to consider the Douglas factors when determining the appropriate penalty to impose for an act of employee misconduct. *Douglas vs. Veterans Administration*, 5 M.S.P.R. 280 (1981). The Agency failed to properly weigh these factors in its decision to remove Plaintiff from federal service. Specifically, the Agency improperly weighed Plaintiff's length of service, veteran status, job performance, and mental illness as a mitigating circumstance.  Plaintiff worked in federal service for CBP from 2014 until June 26, 2020 for a total of six years and a service-connected disabled veteran of the United States Navy.  Plaintiff received numerous positive work performance reviews and was given Unit Citation for work performed for the agency with Joint Terrorism Task Force (JTTF) and Tactical Terrorism Response Teams (TTRT).

Plaintiff was sexually assaulted during her time serving in the United States Navy. This presents itself in the form of anxiety and stress, which is especially triggered when confronted by men in the manner the Plaintiff had been treated and made to deal with.  This is a mitigating circumstance with regard to the charges against Plaintiff.  Additionally, the clarity with which Plaintiff was on notice of any rules or changes that were not adhered to on the part of the Agency prejudice and mis-characterized particularly because Plaintiff's Reasonable Accommodations regarding clear, timely response and concise written instructions from her first-line supervisor Mr. Henderson were not followed.

Moreover, the severity of removal is not proportionate to the charged actions. Most importantly, the Agency did not consider the mitigating circumstances surrounding the offense. Plaintiff's disability (Adjustment Disorder) was exacerbated by Mr. Riley's and Mr. Henderson's actions and their lack of consistency regarding her Reasonable Accommodations their actions were deliberate. The Douglas factors are for corrective rather than punitive purposes and the Agency failed to consider charges and specifications delineated in the removal proposal. Alternative these factors, which weigh against removing Plaintiff from federal service, were improperly weighed by the deciding official Mr. Collins.

Title 1 of the American Disability Act (ADA) provide protections for veterans with disabilities and prohibits an employer from treating an employee unfavorably in all aspects of employment, including hiring, promotions, job assignments, training, termination, and any other terms, conditions, and privileges of employment because he or she has a disability.

Therefore, the Agency's decision to remove Plaintiff from federal service was improper and should have been reversed. An adverse action, such as the instant removal actions, promotes efficiency of the service when the grounds for the action relate to either employee's ability to accomplish her job satisfactorily or some other legitimate government interest. *Fontes v. Department of Transportation, 51 M.S.P.R. 655, 665* (1991).

### *Claim 2*

*Whether Appellant's removal from Federal Service was based on prohibited personnel practice.*

Prohibited personnel practices (PPPs) are employment-related activities that are banned in the federal workforce because they violate the merit system. This includes employment actions based on retaliation, employment discrimination, reasonable accommodation denial.

Because the Agency impermissibly based its decision to remove Plaintiff from federal service on these PPPS, Plaintiff's removal was erroneous and should have been reversed.

### *Claim 3*

### *Retaliation for prior EEO activity*

Plaintiff's removal from federal service comprised retaliation based on her prior EEO activity against the Agency. Plaintiff engaged in protected activity when she filed an EEO complaint and subsequent suit against the Agency. The Agency, having knowledge of this protected activity, and personnel action against Plaintiff when it wrongfully suspended, her security clearance, and finally removed her from federal service. There is a causal connection between Plaintiff's protected action and the Agency's personnel actions. First, temporal proximity between the two exists because of Plaintiff's prior EEO complaint activity.

Second, the Agency's grounds for adverse personnel actions taken against Plaintiff were not sufficiently grounded. Third, the same Agency officials accused of discrimination in Plaintiff EEO complainant recommended the subsequent adverse personnel action be taken against her including Mr. Riley and Mr. Ocker. Therefore, Plaintiff's removal from federal service was an act of retaliation by the Agency for Plaintiff's prior EEO activity. Accordingly, Plaintiff removal should have been reversed.

CBP Ethics, Labor, and Employment legal Attorney's Josh Shuey was aware of prior EEO activity and Jeb Harmon was designation of Agency Representative and conspired a medical retirement without Plaintiff knowledge, or consent. Plaintiff never communicated demanding a medical retirement from federal service and presently there is no transcribed offical documentation of any demand to the Agency. Plaintiff was forced into retirement involuntary due to her disability. 2020. *Ex. 20 at 1-18.*

Third, Mr. Shuey and Jeb Harmon had knowledge of Mr. Riley's emails to Donald Torrence October 2018, stating "Don Sorry for the ambush by Ms. Ward but things are in motion now, so her erratic behavior will start to ramp up. Ms. Ward she was issued her suspension letter today she didn't take it well. Apparently, I can't talk to her because I make her anxiety level go up. I started out listening to her and her nonsense and as soon as I stopped her random unnecessary travel she lost it. So long story short, after a barrage of disrespectful emails that looped in the former OI AC, CBP Chief Counsel, (Scott K. Falk), former AC, Chief of Staff for C1 and countless others I coordinated with LER to give her a letter of reprimand, she told me you didn't want to meet with me and said that I was harassing her???

Oh and by the way she sent that email to the world also. Then I gave her a letter of instruction to tell her to stay in her lane and not involve executive leadership in misconduct matters she declined meeting with me again stating that I was harassing her??? So I wrote her up and proposed a 5-day suspension and it was issued today. If she wants to go down this road, she got the right one I am willing and I will do all of my homework. I won't have her stressing everyone out and continuously getting away with it. I'm going to work the process until she complies or gets removed"

Lorna Robinson respond to Mr. Riley on October 18, 2018 Wow!! I'm sorry you have to go through all of that madness, but if anyone can get that situation handled I know it's you. I wish you all of the best of luck with her. It's just unfortunate that Mission Support wouldn't action Elvin's efforts to decline her conversion to full-time status two years ago. Unfortunately, because of insufficient record keeping regarding her unsatisfactory conduct, there wasn't sufficient supporting documentation to move forward.

At this point, she's doing it to herself. The travel has always been an issue with her. She

wants to be able to go where she wants, when she wants. I shut it down while I was there and while she wasn't happy, she didn't go off the rails. She always takes that "harassment" position with the male managers. In the current environment, she's using it like a weapon to coerce management decisions. I just never would have thought she would hit C1's radar. With any luck, the suspension will be a wakeup call."

Dwight Riley remarks were retaliation and made it personal, malicious, premediated, strategized, plotted with management, and continued to maintain his position in leadership in 2018. Plaintiff was removed from federal service in June 2020 and CBP legal Attorney Jeb Harmon and Josh Shuey overlooked Mr. Riley actions while employed with CBP. Mr. Riley on September 2020 transferred to Commodity Futures Trading Commission *Ex. 6 at 15, M.S.P.B transcript* with no accountability for his serious and harmful harassment and both Attorneys were aware of prior EEO activity and continued with the removal process of Plaintiff. Mr. Harmon designation as CBP Representative. *Ex 21. at 1-25*

## Claim 4

### Disability Discrimination

Plaintiff's removal from federal service was a product of disability discrimination against Plaintiff by the Agency. Plaintiff's medical evidence shows that she has mental impairments that substantially limit major life activities, so she is disabled pursuant to Section 504 of the Rehabilitation Act. Thus, Plaintiff belongs to a protected class. Plaintiff's supervisors were aware of her disability and treated her differently because of it. The adverse actions taken against Plaintiff were not based on poor job performance, but on acts that were a product of her mental impairments. Therefore, agency officials treated Plaintiff differently and in an adverse way based of her disability. Department of Veterans (VA) diagnosed Plaintiff with Post-

14

Traumatic Stress Disorder (PTSD) in March 20, 2020 for ongoing hostile work environment. Subsequently, Agency had knowledge of VA documentation for PTSD and continued with Plaintiff's removal from federal service *Ex. 22 at 2.*

### *Claim 5*

### *Reasonable Accommodation Denial*

Plaintiff was granted Reasonable Accommodations because of her Adjustment Disorder in 2016. Part of those reasonable accommodations included providing clear written instructions for work assignments and sufficient time to complete in collaboration, maintaining open channels of communication between the employee and the new and old supervisors, allowing soothing music, reducing distractions and noise in the work area, providing space enclosures, providing flexible leave for health problems, and removal from working in a Sensitive Compartmented Information Facility (SCIF) area. These accommodations were put in place to help Plaintiff continue to perform her job well by lessening any stress and anxiety that her Adjustment Disorder caused.

During the period of January 2020 through February 2020, Plaintiff was not provided clear written instructions for work assignments and open channels of communications between her and her supervisors. Plaintiff's supervisory chain was not following her reasonable accommodations.  Neither Mr. Riley nor Mr. Henderson informed Plaintiff of any change in servicing regions through written and open communication. She was made aware of possible changes only after another fellow employee emailed Plaintiff in January 2020.  This led to Plaintiff's email to Mr. Collins on February 3, 2020, where she detailed her history with Mr. Riley and the EEO complaint she filed in 2017.  She requested a temporary assignment to continue working with OFO HQ as the security specialist for East Coast AOR Tactical Terrorism

15

Response Team (TTRT) and Joint Terrorism Task Force (JTTF).

Additionally, Plaintiff requested additional reasonable accommodations in April 2020. She withdrew these requests after being told that submitting new reasonable accommodations requests could lead to a change of the accommodations that were already in place.

### Harm to Plaintiff

Plaintiff was grieving the loss of her job in the middle of a COVID pandemic and thrown into an emotional tailspin unable to process the information, seeking support from Department of Veterans Affairs crises line while trying to locate her mental health physician and trying to adjust to the news of being removed from federal services. Management had no compassion knowing the Plaintiff history of mental disability history. Plaintiff was removed on Friday June 26, 2020 and Mr. Henderson notified Plaintiff on June 29, 2020 all her personal items were being inventoried for delivery and she requested a two-week delay in returning items. Mr. Henderson did not take that request into consideration and Plaintiff received items on or about July 1, 2020 and some items were damaged. Plaintiff is a Iraq Veteran and member of the Veterans of Foreign Wars (VFW) and had given 20 years of her life for this country and ousted into the streets with no empathy from her supervisor Mr. Henderson and management.

Mr. Riley and Mr. Henderson began interfering with Plaintiff work performance that created an intimidating, offensive, hostile environment and never received any justification as to why work assignments were being taken away and It became difficult and uncomfortable for Plaintiff at work. Over a period of time while working in Office of Intelligence (OI) Plaintiff was physically removed by security from the building per management's request walked around District of Columbia with suicidal ideation confused and humiliated in front of co-workers, suspension of security clearance, placed on administrative leave, request from my immediate

supervisor Mr. Henderson for an internal investigation, for alleged misconduct and breach of integrity. Plaintiff admitted herself into Fort Belvoir emergency room for stomach cramps due to anxiety, increased calls to the VA crises line in the middle of the night because a lack of sleep, increased appointments with mental health physician at Fort Belvoir Hospital, increase in medication was prescribed for anxiety, and sleep deprivation because of daily stress under the leadership of OI. Psychiatric mental health nurse practitioners had written continuous letters requesting removal from OI hostile work environment because of warning signs of my mental health declining and after head injury. *Ex. 23 at 1-9.*

The core of EEO is the right to work and advance on the basis of merit, ability, and potential free from prejudice or discrimination. Plaintiff never had the opportunity to advance to the next higher paygrade instead she became a victim of work place bulling, discrimination, and harassment, that began in 2017 and it became the norm. With the lack of support Plaintiff received from management it became impossible for Plaintiff to perform and excel into a productive employee in its place suffered damages physical pain, loss of enjoyment of life, loss of quality of life, depression, anxiety, humiliation, defamation of character, sadness, blacked out at work and sustained a head injury, and in March 2020 was diagnosed with PTSD in a cultural misalignment workplace that made it challenging to feel comfortable in on-going hostile work environment. Management would never understand Plaintiff daily struggles until they walk in those shoes, or the right to cast judgement or destroy Plaintiff civilian career because she has a mental disability.

Supervisors, managers, and management have a "duty to exercise reasonable care to prevent and promptly correct harassment." Each named individual including CBP legal department and Human Resource were aware of the ongoing behavior in the department.

17

Management was responsible in enforcing anti-harassment policy, complaints procedure, and take other reasonable steps to prevent and correct harassment and they did not intervene and enforce the policy, from 2017 through 2020 they allowed it continue daily and turned a blind eye. The following individuals Mr. Riley, Mr. Ocker, Mr. Collins, Mrs. Russell-Taylor, Mr. Henderson, Attorney Mr. Harmon and Mr. Shuey, Mr. Ty Eanes, Judson Murdock, former employee Patrick Flanagan, Ms. Robinson, CBP Chief Counsel Mr. Falk, Mr. Baughman, Mr. Ford, Mr. Bettis, Mr. Kirkland, Mr. Finnegan, Mr. Howard, CBP Labor and Employee Relations, and Joint Intake Center is responsible for their own behavior in upholding and implementing CBP's policy instead they decided not to intervene and ignored federal laws and engaged in unlawful behavior and never held accountable, instead some relocated to another government Agency, promoted to higher position, remained in the federal government, and retirement. *Ex. 24 at* 1-170.

Plaintiff was a victim of malicious, premeditated, actions where management conspired intentional infliction of emotional distress, loss of care and executed a plan that caused traumatic harm of PTSD. "The symptoms of PTSD really never go away," Dr. Sanjay Gupta told CNN. "Here is why: There is a profound psychological and physiological reaction to something traumatic. Plaintiff traumatic event cannot be completely undone, through it can be diminished in the mind" that will ever go away. The Department of Homeland Security is committed to engaging the skills, talents, and experience of our nation's veterans. They are proud to be one of the three agencies that hire the most veterans across the federal government; veterans enrich their workforce and help DHS to meet their mission and there is a number of veterans employed within DHS agency's face discrimination and the agency's are required to protect veteran workers' rights from discrimination or unfair treatment and the Agency failed the Plaintiff.

**Financial Impact after Termination**

Plaintiff was overwhelmed with uncertainty being removed from government service it took a heavy toll on her mood and overall mental and emotional health.  Depleted emergency account, withdrew from Thrift Savings Plan (TSP) account and additional investment funds for EEOC and MSPB case, penalized by the internal revenue service (IRS), credit bill for $10,000 for lawyer fees, and owed Virginia States taxes in 2021in the amount of $2,272.17, retirement payment were interim and no Virginia taxes were withheld.

Office of Personal Management (OPM) deposited back pay in 2021, Plaintiff 2022 taxes owe the Internal Revenue Service (IRS) $3, 222 dollars and the State of Virginia $ 4, 098 dollars. As a federal employee covered by the Federal Employee's Retirement System (FERS) Plaintiff no longer has access to make TSP contributions, investment options, receive employer matching contributions, eligible for the five percent contribution rate, social security and Medicare withholding, accrual of sick and regular leave, basic salary each pay period, promotions, contribute to personal investment accounts.  Plaintiff mother is a dependent and lean on her for support and being removed from federal government it has been a struggle in trying to continue that support.  Plaintiff resident require considerable home improvements with a decrease in financial income banking institution decline home loan for upgrades.  Plaintiff is only receiving 40 percent of high three of $103, 000 and no additional benefits for medical retirement.  Inflation is at an all time-high for 40 percent of a high three salary of $3,598.44 monthly.

**Remedies**

If the Court finds in the Plaintiff favor, it is asked that The Honorable Alejandro Mayorkas Secretary, Department of Homeland Security held legally responsible for everything presented and be considered thoroughly and evaluated on the basis of facts, legal precedencies

and guidelines ensuring the Plaintiff be justifiably remedies of non-economic damages in the amount of $10 million dollars. Under Title VII, GINA, and Rehabilitation Act, back pay is limited to two years prior to the date the discrimination complaint was filed, computation if any applicable step increase or differentials, interest, annual leave, sick leave medical retirement deducted from salary sick leave added time calculated into months and recalculate medical retirement benefits, consider all promotional advancement to next paygrade, TSP, and retirement contributions all other benefits, all attorney fees from prohibited personnel practices (PPP) removal from federal service, reprisal for prior protected activity and EEOC case. See *5 U.S.C. 5596* See *Vereb v Dep't. of Justice, EEOC Petition No. 0498008* (Feb. 26, 1999); See *Holly V U.S. Postal Service, EEOC Petition No 04A50003* (Nov 2, 2005); See *Morrow v. U.S. Postal Service, EEOC Appeal No. 0720070058* (Nov. 13, 2009).

Agency liable for any increase tax liability resulting from receipt of a lump sum of back pay in a single tax year. See *Mohar v U.S Postal Service, EEOC Appeal No. 0720100019* (Aug. 29, 2011); *Teresita Lorenzo V Dept of Defense Education Activity, EEOC Petition No. 01A61644* (September 29, 2005); *Warren Goetze v Dept of the Navy, EEO Appeal No. 01991530* (Aug 23, 2001). Plaintiff federal medical disability is determined by her age and years of service when she retired and benefits will be recalculated as if she had continued working until age 62. Federal Employees Retirement System (FERS) will recalcualte Plaintiff high three salary from 2020 and increased cost-of-living adjustments is compensated and Plaintiff will be penalized by point 1 percent because of less than 20 years of service and a likelihood she could have worked long enough increasing her paygrade and salary.

Plaintiff will not have paid enough into Social Security taxes on earnings to be covered by Social Security Retirement. Early retirement Social Security reduces retirement benefits by

certain percentage taken away from full benefits, based on how many months Plaintiff retired before reaching normal retirement age. Plaintiff could have continued to work for the next 16 years or beyond her full retirement age to qualify for full Social Security retirement benefits. Employees born after 1929 need 40 Quarters of Coverage (QCs) work credit by Social Security and this changes each year. Once Plaintiff reach retirement age of 62, the income she receives will not balance her household budget and probably need anywhere from 60 percent to 75 percent to maintain a pre-retirement living standards and since removal form federal service Plaintiff will not have the opportunity to plan properly for a retirement income to establish a living standard.

Plaintiff is requesting $3,145,338 million for future salary, locality payment for incorporating the 4.1percent general schedule increase and locality payment of 32.49 percent for the locality pay area of Washington DC and total increase standard 4.86 pay raises, and years from GS-13 step 4 in 2023, Virginia States taxes 2021 $2,272.17, IRS 2022 taxes $3, 222, State of Virginia taxes $4,098, attorney fees EO case $63,330, MSPB case $18,313, District Court filing for $402 dollars, and priority mail express to Defendant for estimated $28 dollars. *Ex. 25 at 1-28.*

Katherine Ward
2855 Chinkapin Oak Lane
Woodbridge, VA 22191
Phone (757) 650-3683
wardk_01@msn.com

21