**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KATHERINE WARD,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN,[1] in his official capacity as the Secretary of the Department of Homeland Security,<br><br>Defendant. | ) | Civil Action No. 23-813 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Katherine Ward, brings this civil action against the defendant, Markwayne Mullin, in his official capacity as the Secretary of the Department of Homeland Security ("DHS"), alleging "unlawful employment discrimination on the basis of sex, disability, reprisal, hostile work environment[,] and interference with statutorily protected rights in violation of Title VII of the Civil Rights Act of 1964," 42 U.S.C. §§ 2000e–2000e-16(a), and § 501 of the Rehabilitation Act ("the Act"), 29 U.S.C. § 791. See First Amended Complaint ("Am. Compl.") at 1, ECF No. 22. Currently pending before the Court is the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See generally Defendant's Motion to Dismiss and Memorandum in Support Thereof ("Def.'s Mem."), ECF No. 26. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons

[1] Markwayne Mullin is the current United States Secretary of Homeland Security and is therefore substituted for Alejandro Mayorkas and Kristi L. Noem as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Complaint, ("Original Compl." or "Compl."), ECF No. 1; (2) Compl., Exhibit ("Ex.") 20 ("Records Reflecting Pl.'s Medical Ailments"), ECF No. 1-1; (3) the Transcript of Motion Hearing Before the Honorable Reggie B. Walton (Continued . . .)

that it must grant the defendant's motion to dismiss because the Court lacks subject-matter jurisdiction.

## I. BACKGROUND

### A. Statutory Background

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability . . . be subjected to discrimination" by a federal agency. 29 U.S.C. §§ 794(a)–(b); see Zano v. McDonough, No. 22-2748 (RBW), 2024 WL 2699976, at *11 (D.D.C. May 24, 2024) (Walton, J.). The Americans with Disabilities Act has been incorporated into the Rehabilitation Act, and also prohibits federal agencies from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); see also 29 U.S.C. § 791(f); Qashu v. Rubio, 172 F.4th 28, 33 (D.C. Cir. 2026) (same).

If a federal employee believes that his or her rights under the Rehabilitation Act are not being enforced, the employee may sue to enforce them. See Ali v. Regan, 111 F.4th 1264, 1268 (D.C. Cir. 2024). "To prevail, an employee must allege and prove that: (1) [s]he is disabled, (2) h[er] employer had notice of the disability, and (3) the employer denied h[er] request for a

---

(continued . . .)
(Jan. 18, 2024) ("Jan. 2024 Mot. Hr'g Tr."), ECF No. 14; (4) the Transcript of Motion Hearing Before the Honorable Reggie B. Walton (Sept. 13, 2024) ("Sept. 2024 Mot. Hr'g Tr."), ECF No. 24; (5) Def.'s Mem., Ex. A ("Pl.'s MSPB Appeal Form"), ECF No. 26-1; (6) Def.'s Mem., Ex. B ("Merit Systems Protection Board ("MSPB") Initial Decision"), ECF No. 26-2; (7) Def.'s Mem., Ex. C ("Pl.'s Formal Equal Employment Opportunity ("EEO") Complaint"), ECF No. 26-3; (8) Def.'s Mem., Ex. D ("Equal Employment Opportunity Commission ("EEOC") Decision on Request for Reconsideration"), ECF No. 26-4; (9) Def.'s Mem., Ex. E ("MSPB Proof of Final Decision"), ECF No. 26-5; (10) Def.'s Mem., Ex. H ("EEO Complaint Confirmation"), ECF No. 26-8; (11) the Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 27; and (12) the Reply in Further Support of Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 29.

reasonable accommodation." Id. at 1268–69. A reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Equal Employment Opportunity Commission regulations further specify that "reasonable accommodations" include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position," as well as "[m]odifications or adjustments that enable . . . [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by [the employer's] other similarly situated employees without disabilities." 29 C.F.R. §§ 1630.2(o)(1)(ii)–(iii).

The employee bears the "initial burden of showing that a reasonable accommodation is possible." Ali, 111 F.4th at 1269. "Once that showing is made, an employer may still avoid liability by showing that the proposed accommodation would impose an 'undue hardship' on the employer's operations." Id. (citing 42 U.S.C. §§ 12111(10)(A), 12112(b)(5)(A)). An employer fully satisfies its statutory obligation by offering an accommodation that is reasonable, even if it is not the one preferred by the employee. Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998).

Aggrieved federal employees who believe that their employing agency engaged in conduct prohibited by the Act must "exhaust administrative remedies before they can [sue] to enforce [its] protections." Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (citing

Barkley v. U.S. Marshals Serv., 766 F.3d 25, 33 (D.C. Cir. 2014)). This requirement necessitates that the individual "submit[] a claim to the employing agency itself[,]" id. at 1099 (citing Kizas v. Webster, 707 F.2d 524, 543–44 (D.C. Cir. 1983)), "within 45 days of the date of the [alleged discriminatory action,]" id. (citing 29 C.F.R. § 1614.105(a)(1)) (internal quotations omitted). The requirement is essential because "[t]he Act limits judicial review to employees aggrieved by the final disposition of their administrative complaint." Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006) (citing 29 U.S.C. 794a(a)(1)) (internal quotations omitted); Barkley, 766 F.3d at 34 ("[T]he requirement that the aggrieved employee first seek an administrative resolution . . . commands strict adherence.").

Additionally, federal employees bring a "mixed case" when they "assert[] claims . . . [that] arise[] under a federal employment discrimination law . . . and . . . relate[] to or stem[] from an action . . . within the jurisdiction of the Merit Systems Protection Board[,]" Niskey v. Kelly, 859 F.3d 1, 6–7 (D.C. Cir. 2017), a "quasi-judicial federal agency . . . established . . . to review civil service decisions[,]" Jones v. U.S. Dep't of Just., 111 F. Supp. 3d 25, 31 (D.D.C. 2015) (citing 5 U.S.C. § 7701). And, in such a case "the employee can forgo the internal agency exhaustion process and take h[er] claim directly to the Board." Niskey, 859 F.3d at 7 (citing 5 U.S.C. § 7702) (citations omitted). "Alternatively, the employee may file a mixed case complaint with the agency and then appeal to the Board" if the agency issues an adverse decision or fails to timely act on the complaint. Id. (citing 5 U.S.C. § 7702) (citations omitted). In either case, "the agency bears the burden of [substantiating its actions] by a preponderance of the evidence," U.S. Postal Serv. v. Gregory, 534 U.S. 1, 5 (2001), and "the [MSPB] has independent authority to consider whether [the agency action was] appropriate for the specific misconduct involved," Local 2578, Am. Fed'n of Gov't Emps. v. Gen. Serv. Admin.,

711 F.2d 261, 265 (D.C. Cir. 1983) (citation omitted). "If the [MSPB] upholds the agency action, the employee may [appeal the decision to the] EEOC or [ ] seek judicial review." Niskey, 859 F.3d at 7 (citing §§ 7702, 7703(b)) (citations omitted).

## B. Factual Background

Unless otherwise specified, the following factual allegations are derived from the plaintiff's Amended Complaint. And, although as the plaintiff admits, the "dates [of certain events] seem to be unconnected," Am. Compl. ¶ 71, the Court must "construe the complaint liberally" in resolving whether it can survive the defendant's motion to dismiss, see Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011).

The plaintiff "served in the United States Navy [between 1994 and 2014,]" Am. Compl. ¶ 30, and was diagnosed with "adjustment disorder with anxiety" in 2014, "based on a traumatic sexual assault" she experienced during her military service, id. ¶ 31.[3] The plaintiff contends that her "mental health condition was more prominent when she was confronted by men[,]" including when "a male [would] declare [that] he was the boss and there would be no questions" tolerated. Id. ¶ 68.

In November 2014, the plaintiff "began working [at the DHS] as a Security Specialist [at general schedule] ["(]GS[)"]11/02." Id. ¶ 32. Thereafter, she received two promotions—the first to the level of "Security Specialist GS 12/01" in November 2015 and the second to the level of "Security Specialist GS 13/01" in November 2016. Id. In those roles, the plaintiff "was responsible for processing Requests for Access ('RFA'), conducting indoctrinations, and requesting indoctrination assists" for several components of the DHS. Id. ¶ 33. These duties

[3] The plaintiff does not specify when in 2014 she received the adjustment disorder with anxiety diagnosis. See Am. Compl. ¶ 31.

"required [that the plaintiff] maintain a sensitive compartmented information ('SCI') clearance." Id.

"In October 2016, [the plaintiff] requested a reasonable accommodation [to] work[] in a location other than the . . . [sensitive compartmented information facility ("]SCIF[").]" Id. ¶ 34. The plaintiff alleges that her "request was approved, but not without controversy." Id. At a time unspecified[4] by the plaintiff, she alleges that her "then treating [p]sychiatric [m]ental [h]ealth [n]urse [p]ractitioner . . . provided a letter that detailed several accommodations [that the plaintiff should receive], [which] include[d] flexible leave for doctor's appointments, . . . breaks to utilize stress management techniques, . . . clear written instructions for work assignments[,] [ ] sufficient time to complete [tasks] . . . , and removal from working in the SCIF area." Id. ¶ 35.

According to the plaintiff, "her then first line supervisor, Elvin Pearson [('Mr. Pearson')], [ ] caused her to experience an exacerbation of the symptoms associated with her mental health diagnosis." Id. Specifically, "[i]n November 2016, Mr. Pearson sent [the plaintiff] an email stating that [she] was being removed from the [RFA processing] team and . . . would be assigned certain office task[s,] which would be discussed [ ] once Mr. Pearson got to a certain status[[5]] on [her] reasonable accommodations requests." Id. ¶ 36. "The email further stated that the RFA program would be immediately consolidated under three of [the plaintiff]'s coworkers to . . . eliminate the backlog [of RFA requests] and [complete] the RFA approved indoctrinations [within] . . . five business days." Id. "Based on that email, [the plaintiff] was concerned that Mr. Pearson was attempting to limit her duties based on her request for accommodation[s]." Id. ¶ 37.

[4] It is unclear from the Amended Complaint whether these additional requests for accommodations were also made in October 2016 or were made at another time.

[5] It is not clear what the plaintiff means when she alleges that Mr. Pearson would assign her office tasks once he "got to a certain status on [her] reasonable accommodations requests." Id. ¶ 36.

And, "[w]hen this was brought to Mr. Pearson's attention, [he] called [the plaintiff] unprofessional [and] stat[ed] that she was failing to follow directions which amounted to insubordination." Id. This interaction prompted the plaintiff to file "an informal complaint of discrimination" in 2016, which she later withdrew. Id. ¶ 38.

Then, "[i]n January 2017, Mr. Pearson sent an email to [the plaintiff]'s first line supervisor," along with copies to two of her colleagues, stating that Mr. Pearson "would need to discuss" with "the incoming [d]irector of [s]ecurity[,]" Calvin Martin ("Mr. Martin"), "how to set [the plaintiff] up with her own security division [so that] the division [would not] look[] inept" Id. ¶ 39. The plaintiff also alleges that Mr. Pearson stated in this email that the plaintiff "had no intent to work the [special security officer (']SSO[)'] box."[6] Id. The plaintiff alleges that, although she was not aware of this email at the time, she "noticed a shift in [Mr. Martin's] treatment of her" and "Mr. Martin [told the plaintiff that] he became aware of [the plaintiff]'s reasonable accommodation [request] from [ ] 2016." Id. ¶ 41.

About one month later, on February 1, 2017, Mr. Martin instructed the plaintiff "to cease working on RFAs." Id. ¶ 42. When the plaintiff asked why this responsibility was being terminated, "she was told that [Mr. Martin] was the director and he made the decisions." Id. The plaintiff alleges that she "experience[ed] an increase of anxiety related to her mental health disorder" as a result of that comment. Id. The plaintiff then "contacted upper management within the department" about the reduction of her duties and expressed that she was experiencing "increased anxiety" from "the rapid change [of her duties]." Id. ¶ 43. On February 28, 2017, the plaintiff alleges that Julius Henderson ("Mr. Henderson"), "a coworker who had stepped into the

[6] According to the plaintiff, the SSO box "was an email provided [to] federal agencies to request clearances." Am. Compl. ¶ 39.

role of [solely the plaintiff's] first line supervisor[,]" "told [the plaintiff], via email, not to contact upper management again." Id. ¶ 44.

Then, on "March 1, 2017, [the plaintiff] was notified that she was not allowed to handle an[y] classified information, which prevented her from [conducting] most of the duties for her position." Id. ¶ 45. That same day, the plaintiff "initiated informal counseling through the [Equal Employment Opportunity (']EEO[')] office." Id. ¶ 46. Two days later, the plaintiff "advised Mr. Henderson [that] she would not be in [the office] that day because she was distraught over the discrimination she was experiencing at work." Id. ¶ 47. "In that [same] email, [the plaintiff also] mentioned that she had [ ] suicidal thoughts and was in contact with her treating doctors." Id.

The plaintiff alleges that "[o]n March 6, 2017, Mr. Henderson received a memo [stating] that [the plaintiff's] security clearance was suspended [pending] the conclusion of an internal investigation." Id. ¶ 48. According to the plaintiff, the memorandum did "not provide any information as to why [the plaintiff] was being investigated." Id. However, the next day, Mr. Henderson sent the plaintiff a memorandum "advising her that she was the subject of an Office of Professional Responsibility [("OPR")] investigation regarding allegations of breach of integrity and unprofessional conduct" but it failed to specify the alleged behavior that led to the allegations. Id. ¶ 49.

Further, "[b]etween March 7, 2017 and March 10, 2017, [the plaintiff] requested [a] reasonable accommodation" "to work in a different location[,]" and she included "a note from her treating physician" along with her request.[7] Id. ¶ 50. The plaintiff also "requested leave" "[b]etween March 7, 2017, and March 21, 2017, . . . but [the request] was denied." Id. ¶ 51.

[7] The Amended Complaint does not explicitly state whether this request was granted. See generally Am. Compl.

Thereafter, the plaintiff alleges that she experienced several more adverse employment actions, including work reassignment, being escorted from the agency, suspension, being prohibited from entering the agency, and denial of a reasonable accommodation request. See id. ¶¶ 52–57.

On May 10, 2017, the plaintiff was notified that OPR determined that the unspecified allegations of breach of integrity and unprofessional conduct "w[ere] a management issue and that security management would solicit a fact finder to examine the allegations." Id. ¶ 59. That same day, the plaintiff's "security clearance was reinstated for top secret collateral assets, but not for sensitive compartmented information." Id. ¶ 60. Then, in August 2017, the EEO conducted an investigation, id. ¶ 61, and the plaintiff was provided with a copy of the investigative file "[o]n or about September 25, 2017," id. ¶ 62.

In October 2018, the plaintiff alleges that she was suspended following "an unclear directive [she was given] regarding [her] duties[,]" despite her then-supervisor, Dwight Riley ("Mr. Riley"), "admit[ing] that [her] 2016 reasonable accommodation was in place[,]" which required "that instructions . . . be provided in writing [to the plaintiff] with an opportunity to collaborate with" the plaintiff regarding the instructions. Id. ¶ 67. The plaintiff alleges that she "experienced anxiety" from this "unclear directive" because "things were changing without her knowledge or input." Id. The plaintiff further alleges Mr. Riley, sent an email to a coworker, Lorna Robinson ("Ms. Robinson"), stating that Mr. Riley "was 'dealing' with" the plaintiff after the plaintiff "was issued [the] suspension letter . . . , [which] she did not take [ ] well." Id. ¶¶ 64–65. According to the plaintiff, Mr. Riley stated that he "wrote [the plaintiff] up and proposed a five-day suspension" after the plaintiff accused him of harassing her. Id. ¶ 65. Mr. Riley also allegedly stated that "he was going to work the process until [the plaintiff] was removed." Id.

Then, on "April 7, 2020, the Department of Veteran Affairs reevaluated [the plaintiff] and increased her disability rating from 50% to 70% . . . due to occupational and social impairment with deficiencies in most areas, such as work, . . . judgment, thinking, or mood." Id. ¶ 69. The next day, "April 8, 2020, the agency proposed [that the plaintiff] be removed from service for 'behavior similar to that [which occurred] on October 21, 2018." Id. ¶ 70. On June 26, 2020, the plaintiff "was removed from duty." Id. ¶ 72.

**C. Administrative Procedural History**

Because the plaintiff filed both an EEOC complaint after experiencing alleged discrimination beginning in 2017, and then separately filed an appeal with the MSPB after being removed from service by the defendant in 2020, the Court will briefly list the dates of each administrative decision, as these dates are imperative to the Court's analysis.

The plaintiff alleges that she "initiated contact with the EEO [ ] on or about March 1, 2017[,] . . .[and was given] notice[] of her right to file a formal EEO complaint on or about April 28, 2017[.]" Id. ¶¶ 10–11. The plaintiff filed her formal complaint that same day, April 28, 2017. Id. ¶ 11. "On or about September 25, 2017, [she] was provided a copy of the [i]nvestigative [f]ile[,]" id. ¶ 12, and [o]n or about September 27, 2017, [she] requested a hearing before an EEOC administrative judge[,]" id. ¶ 13.

In October 2021, the EEOC administrative judge issued a judgment and decision "without a hearing finding that [the p]laintiff was not discriminated against." Id. ¶ 14. The plaintiff requested an appeal of that decision "with the EEOC Office of Federal Operations [('OFO') on] or about November 4, 2021." Id. ¶ 15. The OFO affirmed the EEOC administrative judge's decision and the plaintiff requested reconsideration of the OFO's decision.

See id. ¶¶ 16–17. Finally, on March 7, 2023, the OFO issued a decision affirming that the plaintiff had not been discriminated against by the defendant. See id. ¶ 18.

While this EEO proceeding was progressing through the multiple appeals, the plaintiff filed a separate appeal before the MSPB on June 30, 2020, after she was removed from service by the defendant. See generally Pl.'s MSPB Appeal Form. On December 10, 2020, the MSPB issued its initial decision affirming the defendant's decision to remove the plaintiff from service. See MSPB Initial Decision at 1.

**D. Judicial Procedural History**

On March 27, 2023, the plaintiff, initially proceeding pro se, filed her original Complaint in the Court. See generally Compl. In response to the Complaint, on June 29, 2023, the defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). See generally Defendant's Motion Dismiss at 1, ECF No. 9.

On January 18, 2024, the Court held a hearing on the defendant's motion to dismiss and granted the motion, finding, inter alia, that the Court lacked subject-matter jurisdiction. See generally Jan. 2024 Mot. Hr'g Tr. The plaintiff subsequently retained counsel and filed a motion requesting that the Court reconsider its decision to dismiss the plaintiff's Complaint, see Plaintiff's Motion for Reconsideration (Rule 60(B)) at 1, 2 n.1, ECF No. 16, and sought leave to file an amended complaint, see Notice of Motion for Leave to Amend the Complaint at 1, ECF No. 17. The Court held a hearing on the motions on September 13, 2024, and granted the plaintiff's motions the same day. See Order at 1 (Sept. 13, 2024), ECF No. 21; Minute ("Min.") Entry (Sept. 13, 2024).

The plaintiff filed her Amended Complaint on September 13, 2024, see Am. Compl. at 1, and the defendant filed his motion to dismiss pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) on November 21, 2024, see Def.'s Mem. at 1. On December 11, 2024, the plaintiff filed her opposition to the motion to dismiss, see Pl.'s Opp'n at 1, and the defendant filed his reply to the opposition on January 30, 2025, see Def.'s Reply at 1.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject-matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

## III. ANALYSIS[8]

The defendant argues that the Court should dismiss the plaintiff's Amended Complaint because the Court lacks subject-matter jurisdiction, or in the alternative because the Amended

[8] Plaintiff's Amended Complaint purports to seek "redress [for] unlawful employment discrimination on the basis of sex, disability, reprisal, hostile work environment and interference with statutorily protected rights in violation of Title VII of the Civil Rights Act of 1964, . . . and Section 501 of the Rehabilitation Act." Am. Compl. at 1. However, the Amended Complaint solely pleads claims and requests relief under the Rehabilitation Act. See Am. Compl. at 18–20 (seeking relief from alleged "discrimination in violation of the Rehabilitation Act (Section 501)) (citation modified); id. at 20–21 (seeking relief from alleged "retaliation in violation of the Rehabilitation Act (Section 501)) (citation modified). Because the plaintiff has not developed, let alone mentioned, her Title VII claim anywhere in her Amended Complaint beyond this first sentence, she forfeited it and therefore the Court need not address it. See United States v. TDC Mgmt. Corp., 827 F.3d 1127, 1130 (D.C. Cir. 2016) (deeming an argument "forfeit[ed] because [the party] d[id] not further develop it (or even mention it again) after [a] 'single, conclusory statement'" (quoting Bryant v. Gates, 532 F.3d 888, 898 (D.C. Cir. 2008)).

Complaint does not state a claim upon which relief can be granted. See Def.'s Mem. at 1; Def.'s Reply at 1. As to its jurisdictional position, the defendant argues, inter alia, that claims "pertaining to incidents that occurred in 2017 and 2018 . . . are time-barred." Def.'s Mem. at 8; see also Def.'s Reply at 4 ("[The plaintiff] filed her operative complaint beyond the ninety-day time limit."). The defendant also contends that the Court should dismiss this case because the plaintiff has "fail[ed] to . . . [prove] that she . . . exhausted her administrative remedies . . . relat[ed] to her [2020] termination[,] Def.'s Mem. at 16, or "any discrete claims that occurred before January[ ] 2017," id. at 18.

In opposition, the plaintiff contends that "[u]niversal [e]xhaustion [is] [n]ot [r]equired for [h]ostile [w]ork [e]nvironment" claims. Pl.'s Opp'n at 6. Specifically, the plaintiff asserts that the "defendant created [a hostile work environment]," which negates her exhaustion requirements, id., and makes any time bar "inapplicable" because she continued to experience "unlawful discrimination . . . within the filing period," id. at 9 (citing Pearson v. Chao, No. 17-cv-1965 (EGS), 2019 WL 1004040 (D.D.C. Feb. 28, 2019)). The plaintiff also contends that the claims in her Amended Complaint are timely because they "relate back to the initial [C]omplaint on [their] own merits." Id.

For the reasons below, the Court agrees with the defendant that it lacks subject-matter jurisdiction in this case, and therefore, the Court does not address the defendant's arguments that the Amended Complaint also fails to state a claim upon which relief may be granted.

### A. Whether the Claims in the plaintiff's Amended Complaint Relate Back to the Claims in her Original Complaint

The defendant argues that the plaintiff's claims in her Amended Complaint "pertaining to incidents that occurred in 2017 and 2018," are "new discrete employment actions . . . that were not in her original [C]omplaint" and which "are based on entirely different discrete employment

actions" and "new legal theories," which "do not relate back to March 27, 2023, the date when she filed her initial [C]ompaint." Def.'s Mem. at 10. The defendant further contends that because the allegations pertaining to the alleged 2017 and 2018 incidents do not relate back to the original Complaint, they are time-barred. Id. at 8. The plaintiff responds that "the Amended Complaint relate[s] back to the initial [C]omplaint on its own merits," and that if there is "distance between the two," the Court should interpret this issue in favor of the plaintiff "considering the pro se nature of the initial [C]omplaint." Pl.'s Opp'n at 9.

Federal Rule of Civil Procedure 15 is the procedural authority that "permit[s a party] to amend [her] complaint [at least] once as a matter of course[,]" Mann v. United States, No. 20-cv-1337 (RC), 2022 WL 888181, at *2 (D.D.C. Mar. 24, 2022) (citing Fed. R. Civ. P. 15(a)(1)), to cure any pleading deficiencies in the original complaint, Uzoukwu v. Metro. Wash. Council of Gov'ts, 983 F. Supp. 2d 67, 83 (D.D.C. 2013) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) ("[I]t is an abuse of discretion to deny leave to amend without a sufficient reason such as . . . repeated failure to cure [pleading] deficiencies. . . .") (internal quotations omitted). Nevertheless, "[a] statute of limitations may [ultimately] bar the amendment unless it 'relates back' to the original complaint. . . ." Harris v. Koenig, 673 F. Supp. 2d 8, 11 (D.D.C. 2009). In other words, the amended complaint must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original [complaint,]" Fed. R. Civ. P. 15, or otherwise it will be time-barred if the statute of limitations has expired. Harris, 673 F. Supp. 2d at 12. Moreover, "[r]elation back is improper when the amended complaint asserts a new ground for relief supported by facts that differ in time and type from those [in] the original pleading. . . ." Id. at 12 (citing Mayle v. Felix, 545 U.S. 644, 650 (2005) (internal quotations omitted)).

Because the plaintiff's Amended Complaint mainly details alleged discriminatory actions that occurred in 2017 and 2018 (which also comprised her EEO complaint proceedings) and requests relief based on those alleged discriminatory actions, the Court must determine whether those facts and grounds for relief are sufficiently "related" to her original Complaint.[9] Once the Court determines whether her Amended Complaint in fact relates back to her original Complaint, the Court will then determine whether she timely challenged the defendant's decision regarding her EEO complaint.

The Court begins its analysis by first considering its earlier rulings regarding the plaintiff's original Complaint made during the hearing on the defendant's motion to dismiss conducted on January 18, 2024. See generally Jan. 2024 Mot. Hr'g Tr. During that hearing, the plaintiff, who was proceeding pro se at the time, explained that she "felt [she] was [ ] terminated because of discrimination [after] [she] had [filed] an EEOC complaint" and "also [because she] asked for a reasonable accommodation." Id. at 11:16–22. The defendant argued in response that the plaintiff's original Complaint "only pertain[ed] to her termination in 2020" and that the separate EEOC complaint included "only alleged events that occurred in 2017 and 2018" and was therefore "not relevant to this case." Id. at 12:2–12. The plaintiff disagreed, arguing that she "tied everything [ ] together" in her original Complaint, i.e., she attempted to challenge both the alleged EEOC discrimination proceeding and the termination "at the same time" in her Complaint. Id. at 13:24–14:4. The defendant replied, arguing that "the EEOC complaint . . . d[id] not pertain to any of the allegations that she raised in her [judicial C]omplaint . . . [a]nd . . . request[ed] that th[e] case be dismissed." Id. at 14:14–18. The Court

[9] Because the plaintiff filed her original Complaint pro se, the Court will "liberally construe[]" it, "however inartfully pleaded[.]" See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (explaining that pro se filings "must be held to less stringent standards than formal pleadings drafted by lawyers").

ultimately agreed that "the [defendant] ha[d] the proper argument[,]" id. at 12:16–17, [a]nd [concluded that it] would have to grant the [defendant]'s motion." Id. at 14:19–20. Therefore, the Court found that when the original Complaint was the operative complaint in this case, it did not challenge the alleged discrimination that comprised the EEOC complaint, but only challenged the plaintiff's 2020 termination.

Having reviewed the plaintiff's original Complaint anew, the Court again concludes that although it references the EEOC proceeding, it does not seek any relief based on the facts that comprised the EEOC proceeding. Instead, the plaintiff's original Complaint merely alleges that the plaintiff's "removal from federal service comprised retaliation based on her prior EEO activity against the [defendant]." Compl. at 12.[10] For example, the plaintiff alleged in her original Complaint that there was "a causal connection between [the p]laintiff's protected action and the [defendant]'s personnel actions." Id. Specifically, the plaintiff argued that employees of the defendant "conspired a medical retirement without [the p]lainitff['s] knowledge[] or consent" and "forced [her] into retirement involuntar[il]y due to her disability," even though they were "aware of [her] prior EEO activity." Id. (citing Records Reflecting Pl.'s Medical Ailments at 1–18). The plaintiff also details the alleged email between Mr. Riley and Ms. Robinson[11] in October 2018, in which Mr. Riley stated that after the plaintiff accused him of harassing her, Mr. Riley "wrote her up and proposed a 5-day suspension" that was issued the day he sent the email

---

[10] This conclusion is also consistent with what the plaintiff included in her MSPB Appeal Form. See generally Pl.'s MSPB Appeal Form. In the section of the form which asks "why . . . the agency was wrong in taking th[e] action" of removing her from service, the plaintiff wrote that "[t]he action was predicated on the fact that [the plaintiff] [ ] filed an EEOC Complaint[,] and [she] believes th[e] removal was retaliation and an act of discrimination based on her prior EEO activity." Id. at 6. The plaintiff also stated that "[t]he [a]gency did not adequately take into account the Douglas Factors in mitigating the removal proposal to an action lesser than removal from federal service." Id.

[11] Although it appears from the plaintiff's original Complaint that the email was between Mr. Riley and Donald Torrence, see Compl. at 13, in her Amended Complaint she alleges that the email was between Mr. Riley and Ms. Robinson, see Am. Compl. ¶¶ 65–66.

to Ms. Robinson. Compl. at 13. The plaintiff also alleged that Mr. Riley also stated: "[i]f she wants to go down this road, she got the right one[.] I am willing and I will do all my homework. . . . I'm going to work the process until she complies or gets removed." Id. However, as concerning as this email is, if this is truly what Mr. Riley said, the Court finds that the original Complaint alleges retaliation following, or in relation to, the EEOC proceeding which resulted in the plaintiff's ultimate termination. And, that is distinct from a challenge to the discrete acts of alleged discrimination in 2017 and 2018, that comprised her EEOC complaint.

To be sure, the Amended Complaint details, inter alia, that after the plaintiff "requested a reasonable accommodation" in October 2016, her "first line supervisor" removed her from the team she was previously assigned to and she became "concerned that [he] was attempting to limit her duties based on her request for accommodation[s]" which "caused her to experience an exacerbation of the symptoms associated with her mental health diagnosis." Am. Compl. ¶¶ 34–37. Then in early 2017, the plaintiff alleges that she was instructed to cease working on the tasks to which she was previously assigned. Id. ¶¶ 42, 45. When the plaintiff asked why her duties were being reduced, her supervisor allegedly told her "that he was the director and he made the decisions." Id. ¶ 42. The plaintiff alleges that this exchange caused her anxiety to increase. Id. Then, after the plaintiff "initiated informal counseling through the EEO office" and "mentioned [to her supervisor] that she had [ ] suicidal thoughts and was in contact with her treating doctors[,]" her supervisor "received a memo [notifying him] that [the plaintiff]'s security clearance was suspended until the conclusion of an internal investigation." Id. ¶¶ 46–48. Additionally, the plaintiff alleges that she was denied leave between March 7, 2017 and March 21, 2017, id. ¶ 51, and received a job reassignment on March 21, 2017, id. ¶ 52, was "suspended indefinitely [on April 7, 2017] because her security clearance had been suspended[,]" id. ¶ 55,

and was denied a "request for reasonable accommodation in the form of working in a different location" without an explanation for the denial on April 12, 2017, id. ¶ 57.

The alleged discriminatory actions described above from the Amended Complaint do not appear in the plaintiff's original Complaint. Rather, at most, the plaintiff alleges in her original Complaint that "[d]uring the period of January 2020 through February 2020, [she] was not provided clear written instructions for work assignments and open channels of communications between her[self] and her supervisors[,]" which was contrary to her previously authorized reasonable accommodations. Compl. at 15. But this grievance regarding the alleged failure to provide her reasonable accommodations in 2020 is different in time than the alleged denial of her reasonable accommodations request she described occurred in 2017 in her Amended Complaint. For all the foregoing reasons, the Court finds that the allegations detailed in the plaintiff's Amended Complaint that relate to the alleged discriminatory actions at issue in her earlier filed EEOC action do not "relate back" to the allegations regarding the ultimate decision to terminate her employment alleged in her original Complaint. See Sept. 2024 Mot. Hr'g Tr. at 14:12–14:19 (previously concluding that because "the allegations that are being raised in the [A]mended [C]omplaint are totally different than the allegations that were raised in the original complaint" the Amended Complaint does not "relate back to what was raised in the original [C]omplaint").

However, the Court finds that since both the Amended Complaint and the original Complaint also assert a claim related to the defendant's ultimate decision to terminate the plaintiff's employment, this claim "ar[i]se[s] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(B). Specifically, as noted above, the original Complaint challenges her ultimate removal by arguing

that (1) "the Douglas[12] factors were not properly weighed" when determining to remove the plaintiff from federal service, Compl. at 10; (2) the plaintiff's "removal was erroneous" because it "was based on prohibited personnel practice[s,]" id. at 11–12; (3) the plaintiff's "removal from federal service comprised retaliation based on her prior EEO activity against the [a]gency[,]" id. at 12; and (4) the plaintiff's "removal from federal service was a product of disability discrimination against [the p]laintiff by the [a]gency[,]" id. at 14. Likewise, the Amended Complaint alleges that the plaintiff's removal was a discriminatory and retaliatory action in violation of the Rehabilitation Act. See Am. Compl. ¶¶ 72–73, 77–82, 85–90.

Because the Court finds that these alleged incidents which occurred in 2017 and 2018 do not relate back to the original Complaint, the Court must next determine if the plaintiff timely brought those claims in her Amended Complaint.

**1. Whether the Claims Related to the Alleged 2017 and 2018 Incidents Included in the EEO Proceeding are Time-barred**

The defendant argues that the "2017 and 2018" incidents "pursued through the EEO process [ ] are time-barred" because they were initiated in this Court "more than ninety days after [the plaintiff] receiv[ed] the EEOC's final decisions and" the plaintiff has not alleged why these claims should be equitably tolled. Def.'s Mem. at 8. The defendant argues that, in order to have timely challenged her claims that relate to the 2017 and 2018 actions encompassed in her EEO proceedings, the plaintiff must have filed her claim in this Court by June 5, 2023. See Def.'s Mem. at 9. However, according to the defendant, because the Court did not accept the plaintiff's Amended Complaint as filed until September 13, 2024, the appeal of the EEO decision was well past the ninety-days the plaintiff had to challenge the decision. Id. at 10. The plaintiff

[12] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

summarily responds that "all acts constituting the claim are part of the same unlawful discrimination and more than one fall within the filing period." Pl.'s Opp'n at 9.

Generally, "a Rehabilitation Act claim against a federal agency must be filed [in a] U.S. District Court '[w]ithin 90 days of receipt of notice of final action taken by [the Agency].'" Jefferson v. Austin, No. 21-cv-1489 (RC), 2024 WL 3967283, at *2 (D.D.C. Aug. 27, 2024) (quoting 42 U.S.C. § 2000e-16(c)); see Grant v. Dep't of Treasury, 272 F. Supp. 3d 182, 189 (D.D.C. 2017) (same). The District of Columbia Circuit "requires strict adherence to the 90-day requirement." Grant, 272 F. Supp. 3d at 189; see Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007) ("Courts apply [the 90–day] limit strictly and will dismiss a suit for missing the deadline by even one day") (internal quotations omitted). Failure to adhere to "the administrative time limit[] . . . erect[s] no jurisdictional bars to bringing suit," Doak, 798 F.3d at 1104, but it does "function[] like a statute of limitations." Grant, 272 F. Supp. at 189; see Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (holding that time limits included in administrative regulations "have the force and effect of law") (internal quotations omitted). Therefore, the limitation period may be equitably tolled only if a plaintiff proves that an "extraordinary reason(s) . . . warrant tolling the 90-day limit to file suit." Grant, 272 F. Supp. at 189; see Jefferson, 2024 WL 3967283, at *2 (citing Smith-Haynie v. District of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998)) (explaining that the filing period operates as a statute of limitations and is subject to equitable tolling and waiver). For example, "[a]n employee is entitled to equitable tolling if [s]he demonstrates [] that [s]he has been pursuing h[er] rights diligently[] and . . . some extraordinary circumstance stood in h[er] way." Niskey, 859 F.3d at 7 (citing Holland v. Florida, 560 U.S. 631, 649 (2010)).

"[F]ederal courts have typically extended equitable relief only sparingly," granting it in such cases involving "a defective pleading during the statutory period, or where the complainant [was] induced or tricked . . . into allowing the filing deadline to pass." Williams v. Perdue, 613 F. Supp. 3d 437, 448 (D.D.C. 2020) (quoting Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990)). "But [the Supreme Court] has generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence [to] preserv[e] h[er] legal rights." Id. (quoting Irwin, 498 U.S. at 96).

In this case, the plaintiff "has only a garden variety claim of excusable neglect," Davis v. Vilsack, 880 F. Supp. 2d 156, 162 (D.D.C. 2012) (citing Irwin, 498 U.S. at 96), considering that she was "unambiguously notified that [she] must sue within ninety days." Id. (quoting Dougherty v. Barry, 869 F.2d 605, 613 (D.C. Cir. 1989)); see EEOC Decision on Request for Reconsideration at 5 (advising the plaintiff that she must file for judicial review of the EEOC decision within ninety days).

As the defendant notes, the plaintiff "received [her] right to sue notices on March 7, 2023[,]" from the OFO denying her request for reconsideration of the EEOC's decision finding that the defendant did not discriminate against the plaintiff "based on sex, disability, [or] in reprisal for prior EEO activity." See Def.'s Mem. at 9 (citing Am. Compl. ¶ 18 describing that "[o]n or about March 7, 2023, the OFO issued a decision upholding the October 27, 2021, administrative decision"); EEOC Decision on Request for Reconsideration at 1, 3. The OFO's Decision on Request for Reconsideration explained that "[t]here [wa]s no further right of administrative appeal on the decision of the" EEOC, and that the plaintiff had "the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that [the plaintiff] receive[d] th[e] decision[,]" i.e., March 7, 2023. EEOC Decision on

Request for Reconsideration at 3–4. Accordingly, the plaintiff should have filed her Complaint on or before June 5, 2023, which was ninety days from March 7, 2023. And, as noted above, although the plaintiff filed her original Complaint in this Court on March 27, 2023, the claims and relief sought in the Complaint did not challenge the EEOC's decision. Instead, the Complaint challenged the defendant's ultimate decision to remove her from service. Therefore, since the plaintiff's claims regarding the issues in her EEOC complaint do not relate back to when she filed her initial Complaint, she did not properly initiate her claims in this Court until September 13, 2024, i.e., the filing date of her Amended Complaint.[13] Thus, because the plaintiff's claims were filed well beyond the ninety-day window, the Court must determine whether the filing deadline should nevertheless be equitably tolled.

The plaintiff seemingly advances no reason why the Court should find that her claims are subject to equitable tolling, beyond broadly arguing in her opposition to the defendant's motion to dismiss that her original Complaint was filed pro se and therefore should be reviewed in a more liberal light. See Pl.'s Opp'n at 10–11; see generally Am. Compl.; see also Def.'s Reply at 8 (arguing that the plaintiff "conspicuously does not raise the issue of, nor put forth any facts to support an argument for, equitable tolling in her amended complaint or opposition."). However, simply representing that the plaintiff originally filed her Complaint pro se does not amount to an "extraordinary circumstance" warranting equitable tolling of her 2017 and 2018 claims. See Niskey, 859 F.3d at 9–10 (affirming the district court's finding that the appellant's claims were not timely raised despite the fact that the appellant proceeded before the agency pro se); Lewis v.

[13] Although the Court accepted the plaintiff's Amended Complaint "as filed" on September 13, 2024, see Order (Sept. 13, 2024), ECF No. 21, it was filed on the docket on February 18, 2024, see Am. Compl. at 22. In any event, regardless of whether the plaintiff's Amended Complaint must be considered "as filed" on February 18, 2024 or when the Court designated it as filed on September 13, 2024, is of no moment to the Court's analysis because either date would have been well past the ninety day date of June 5, 2023.

Sec'y of the Navy, 892 F. Supp. 2d 1, 5 (D.D.C. 2012) (explaining that even pro se plaintiffs must act diligently in pursuing their claims within the statutory filing period). Further, as other judges in this District have recognized, the plaintiff's "inability to retain an attorney is not an extraordinary circumstance [that warrants equitable tolling.]" Miller v. Downtown Bid Servs. Corp., 281 F. Supp. 3d 15, 22 (D.D.C. 2017) (citation omitted); see also United States v. Lawson, 608 F. Supp. 2d 58, 62 (D.D.C. 2009) ("[A] failure to meet [a] statutory deadline due to pro se representation is [an inadequate] circumstance . . . to toll the statute of limitations."). Of significant consideration is the fact that, even considering the plaintiff's pro se posture at the time she filed her original Complaint, she did not list any of the twenty-two items clearly delineated in the OFO's Decision on Request for Reconsideration in her Complaint. See EEOC Decision on Request for Reconsideration at 1–3. Instead, as discussed above, the plaintiff merely challenged the defendant's ultimate decision to terminate her employment.

Accordingly, because the plaintiff's 2017 and 2018 claims related to the EEOC's decision are time-barred, and she has not advanced a good reason as to why they should be equitably tolled, the Court will grant the defendant's motion to dismiss, to the extent that he asks this Court to dismiss the plaintiff's claims related to the 2017 and 2018 alleged events referenced in the EEOC proceedings.[14]

---

[14] In the plaintiff's Amended Complaint, she also details factual allegations related to a 2016 informal EEOC complaint she filed and then later withdrew. See Am. Compl. ¶¶ 34–38. The defendant contends that "[a]ny discrete claims" the plaintiff alleges "that occurred before January 2017, should be dismissed because . . . [they] were abandoned and" the plaintiff failed to exhaust her administrative remedies. Def.'s Mem. at 18–20. The Court agrees with the defendant that any claim the plaintiff seeks to bring related to these allegations that occurred before January 2017 were abandoned by the plaintiff when she withdrew her EEOC complaint related to those allegations and then failed to file another complaint before the EEOC that included those allegations. See, e.g., Am. Compl. ¶ 20 (only listing claims accepted for investigation beginning with allegations in 2017); EEOC Decision on Request for Reconsideration at 1–3 (only listing allegations of discrimination and harassment that occurred from January 9, 2017, to October 21, 2018); Payne v. Salazar, 619 F.3d 56, 58 (D.C. Cir. 2010) ("An employee who is aggrieved by the agency's final disposition of her complaint may then either appeal to the EEOC or file suit in federal court pursuant to 42 U.S.C. § 2000e–16(c)"); Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (explaining "that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on

(Continued . . .)

**B. Whether the plaintiff's Claims Challenging the defendant's Ultimate Decision to Remove Her From Service Were Timely Filed**

Finally, the Court will address whether the plaintiff timely brought her claims challenging the defendant's ultimate decision to remove her from service. The defendant argues that the Court lacks subject-matter jurisdiction over the plaintiff's claims in her Amended Complaint because she "fail[ed] to meet her burden of showing that she [ ] exhausted her administrative remedies for the claims pursued through the MSPB appeal process[,]" i.e., the plaintiff's claims "relating to her termination . . . in 2020." Def.'s Mem. at 16; Def.'s Reply at 4–5. The defendant further contends that the plaintiff "does [not] even hint nor address the exhaustion for claims relating to her 2020 termination[,]" and her Amended Complaint "is devoid of any explanation that could support an argument for equitable tolling." Def.'s Mem. at 17. The plaintiff responds that because she "alleg[es] a hostile work environment" claim and "all acts constituting the claim are part of the same unlawful discrimination and more than one fall within the filing period," her claims are not time barred. Pl.'s Opp'n at 9. For the following reasons, the Court agrees with the defendant and will therefore dismiss the plaintiff's claims related to her 2020 removal from service because they were not timely filed.

"[E]xhaustion . . . is a jurisdictional requirement[] [that] the plaintiff [must] . . . plead and prove," Reagan-Diaz v. Sessions, 246 F. Supp. 3d at 345 (citing Spinelli, 446 F.3d at 162), and the requirement is not satisfied "when the complaint . . . file[d] in federal court includes [] claim[s] that w[ere] not raised in the administrative complaint." Mogenhan v. Shinseki, 630 F.

---

the charge[; and o]nly after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself"); McKeithan v. Boarman, 803 F. Supp. 2d 63, 67–68 (D.D.C. 2011) (finding that when the plaintiff failed to object to the framing of the issues the EEO listed in the notice accepting the plaintiff's complaint, the plaintiff abandoned the claims not listed); Cheatham v. Holder, 935 F. Supp. 2d 225, 237–38 (D.D.C. 2013) (finding that because the plaintiff did not raise two of his four EEO issues before the EEOC prior to filing his lawsuit, the plaintiff did not exhaust his administrative remedies as to the two issues and therefore the court could not consider them).

Supp. 2d 56, 60 (D.D.C. 2009) (citing Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)); see Barkley, 766 F.3d at 34 ("[T]he requirement that the aggrieved employee first seek an administrative resolution . . . commands strict adherence."). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).

Therefore, a "plaintiff who fails to comply, to the letter, with administrative deadlines 'ordinarily will be denied a judicial audience.'" Id. at 13 (quoting Shehadeh v. Chesapeake & Potomac Tel. Co. of Md., 595 F.2d 711, 717–18). However, as discussed above, administrative deadlines "function like a statute of limitations and 'like a statute of limitations, are subject to waiver, estoppel, and equitable tolling.'" Id. (internal brackets omitted) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).

In the plaintiff's opposition to the defendant's motion to dismiss, she argues that she brought a hostile work environment claim in her Amended Complaint. Pl.'s Opp'n at 6–7 (arguing that the "plaintiff's complaint alleges a litany of facts more than sufficient to establish the hostile work environment which the defendant created for the plaintiff."). However, the plaintiff's Amended Complaint pleads only two claims: (1) "discrimination in violation of the Rehabilitation Act" and (2) "retaliation in violation of the Rehabilitation Act." Am. Compl. at 18, 20 (citations modified). Only in the introduction paragraph of the plaintiff's Amended Complaint does she seek "redress" from, inter alia, "unlawful employment discrimination on the basis of sex, disability, reprisal, [and a] hostile work environment. . . ." See Am. Compl. at 1. The Court cannot allow the plaintiff, who is now represented by counsel, to pursue a hostile work environment claim by simply making one undeveloped assertion of such claim in the

introduction of her Amended Complaint. See United States v. TDC Mgmt. Corp., 827 F.3d 1127, 1130 (D.C. Cir. 2016) (deeming an argument "forfeit[ed] because [the party] d[id] not further develop it (or even mention it again) after [a] 'single, conclusory statement'" (quoting Bryant v. Gates, 532 F.3d 888, 898 (D.C. Cir. 2008)); Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.") Accordingly, the Court finds that the plaintiff waived any claim alleging that she was subjected to a hostile work environment and she may not make amendments to her Amended Complaint through her opposition brief to the defendant's motion to dismiss. See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec., 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citing Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).

As to the timeliness of her claims challenging the MSPB's initial decision affirming the defendant's removal decision, 5 U.S.C. § 7703 is clear—"[c]ases of discrimination subject to [the Civil Rights Act of 1964 or section 501 of the Rehabilitation Act of 1973] must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action." 5 U.S.C. § 7703(b)(1)(B)(2). Here, the MSPB's initial decision put the plaintiff on notice of this statutory requirement by stating in the "Notice of Appeal Rights" section:

> (2) Judicial or EEOC review of cases involving a claim of discrimination. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (not the U.S. Court of Appeals for the Federal Circuit), within 30 calendar days after this decision becomes final under the rules set out in the Notice to Appellant section, above. . . . Alternatively, you may request

> review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within 30 calendar days after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

MSPB Initial Decision at 50 (emphasis added). Because the plaintiff did not "petition for review" of the MSPB's initial decision, see MSPB Proof of Final Decision at 1,[15] the initial decision became the MSPB's final decision on January 14, 2021, see MSPB Initial Decision at 44. The plaintiff therefore had thirty-days from January 14, 2021, to file her complaint in this Court challenging the MSPB's initial decision because her claims consisted of allegations of discrimination. However, the plaintiff did not file her Complaint in this Court until March 27, 2023, approximately two-years after the statutory deadline. Therefore, because the plaintiff's claims were filed untimely, the Court may only allow the plaintiff to pursue her claims challenging her 2020 termination if the Court finds that good cause exits to toll the statutory deadline. But, as explained below, the plaintiff fails to prove any such good cause.

Neither in the plaintiff's Amended Complaint nor in her opposition brief to the defendant's motion to dismiss does the plaintiff advance any reason why the Court should equitably toll the statute of limitations regarding her challenge to the MSPB's initial decision, i.e., she has not "demonstrate[d] [ ] that [s]he has been pursuing h[er] rights diligently[] and . . . some extraordinary circumstance stood in h[er] way." Niskey, 859 F.3d at 7. To the contrary, when asked during the motion hearing whether the plaintiff believed she exhausted her administrative remedies before filing her Complaint in this Court, the plaintiff explained that she "spoke to [her] attorney and [she] asked him [whether she] could [ ] appeal" the MSPB's initial

[15] After the plaintiff filed her Complaint in this Court, counsel for the defendant inquired from staff at the MSPB whether the plaintiff filed a petition for review from the MSPB's initial decision, and staff at the MSPB confirmed that the plaintiff did not petition for review and therefore the initial decision became a final decision on January 14, 2021. See MSPB Proof of Final Decision at 1.

decision. Jan. 2024 Mot. H'rg Tr. 8:18–20. According to the plaintiff, her attorney told her "that [she] didn't have a chance of winning . . . [s]o [she] didn't file because of what [her attorney] told [her]." Id. at 8:20–8:21, 9:4–9:5. The plaintiff explained that she "just moved on, because [the] VA and [her] doctor said [she] had been through so much . . . [and she] was following [her] lead counsel[.]" Id. at 9:6–9:8. Then, during the motion hearing held on September 13, 2024, the plaintiff's current counsel explained that she was "not sure whether or not[,] as [a] pro se plaintiff[, the plaintiff] truly understood which complaint – which matter she was appealing and whether or not they had all merged together." Sept. 2024 Mot. Hr'g Tr. at 5:1–5:4.

The Court previously found that despite the plaintiff's representation that she failed to exhaust her "administrative remedies within the agency" in "a timely manner" "because of bad advice [she] received from [her] lawyer[,]" that explanation did not amount to "a sufficient ground to survive the motion to dismiss." Jan. 2024 Mot. Hr'g Tr. at 10:4–10:9. Instead, the Court explained that if the plaintiff believed she received bad advice from her previous lawyer, the proper avenue for the plaintiff to take would be "to try and hold the lawyer accountable for that." Id. at 12:19–12:21. See e.g., Mavity v. Fraas, 456 F. Supp. 2d 29, 33 (D.D.C. 2006) (considering a plaintiff's claims alleging that her attorneys, inter alia, committed legal malpractice by "fail[ing] to adequately prepare and pursue her [gender discrimination administrative claim] through the [administrative] process . . ."); Thomas v. Lescht, No. 23-cv-3528 (TSC), 2025 WL 370984, *2 (D.D.C. Feb. 3, 2025) (explaining that "[c]ourts in this jurisdiction have determined that 'breach of contract or attorney malpractice claims properly belong in state court, even where the underlying case involved claims arising under federal law'") (quoting Steele v. Salb, 681 F. Supp. 2d 34, 36 (D.D.C. 2010)); Hughley v. Weinstock, Friedman & Friedman, PA, 06-cv-88 (RWR), 2006 WL 2244574, *1 (D.D.C. Aug. 4, 2006 )

(remanding a case to the Superior Court of the District of Columbia in which the plaintiff alleged a claim of legal malpractice against an attorney for failing to serve a complaint and summons and prosecute a case in an Equal Employment Opportunity proceeding against the United States Postal Service); Cf. Atlanta Channel, Inc. v. Solomon, No. 15-cv-1823 (RC), 2020 WL 4219757, *7 (D.D.C. July 23, 2020) (finding that "[a] reasonable jury could find that the loss of [a legal malpractice] claim against [a former attorney the plaintiff hired] was reasonably foreseeable [to a new attorney the plaintiff hired] based on [the newly hired attorney's] failure to discuss the issue [with the plaintiff] after she took over the matter" and that "[a] reasonable jury could find that [the newly hired attorney] knew, or should have known, about the potential malpractice claim against [the former attorney] . . . , [and] that the statute of limitations would be running. . . .").

Therefore, because the plaintiff neither during the motion hearings, in her Amended Complaint, or in her opposition to the defendant's motion to dismiss has demonstrated that good cause exists to toll the statutory deadline regarding the appeal of the MSPB's initial decision, the Court must dismiss the remainder of the plaintiff's Amended Complaint. And, because the Court lacks subject-matter jurisdiction over the plaintiff's Amended Complaint it need not address the merits of her claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss the plaintiff's Amended Complaint because the Court lacks subject-matter jurisdiction.

**SO ORDERED** this 11th day of September, 2026.[16]

REGGIE B. WALTON
United States District Judge

[16] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.